UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PROVECTUS BIOPHARMACEUTICALS, INC., | ) ) ) | Case No. 3:16-CV-222 |
| *Plaintiff*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge H. Bruce Guyton |
| HARRY CRAIG DEES and VIRGINIA L. GODFREY, | ) ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff Provectus Biopharmaceuticals, Inc.'s ("Provectus") motion for default judgment. (Doc. 21.) For the reasons stated hereafter, Provectus's motion will be **GRANTED IN PART**.

### I. BACKGROUND

Plaintiff Provectus Biopharmaceuticals, Inc. ("Provectus") initiated the present action against Defendants Harry Dees and Virginia Godfrey on May 5, 2016. (Doc. 1.) According to the allegations in Provectus's amended complaint, Dees was employed as Provectus's Chief Executive Officer ("CEO") until February 27, 2016. (Doc. 8, at 1.) Since at least 1998, Virginia Godfrey has been married to Dees. (*Id*. at 2, 5.)

Provectus is a publically traded company with approximately 22,000 shareholders and is in the business of developing therapeutic pharmaceutical products for oncological and dermatological indications. (*Id*. at 2.) As part of his responsibilities as CEO, Dees "traveled throughout the United States . . . to meet with shareholders to discuss the development of drugs

and progress of clinical testing." (*Id*. at 3.) Dees received advances for travel and entertainment, which were provided to him by wire transfer to his personal accounts. (*Id*.) According to Provectus's travel and entertainment policy, Dees was required to submit an itemized list of travel expenses and provide supporting documentation for each expense before receiving reimbursement from Provectus. (*Id*.) Dees did not, however, regularly submit documentation to support his requests for travel expenses, and, when he did submit receipts, the receipts appeared "irregular" or "altered." (*Id*.) According to Provectus, Dees received: (1) approximately $698,000 in advances for travel expense reimbursements in 2013; (2) $819,000 in travel advances in 2014; and (3) approximately $898,430 in advances in 2015. (*Id*. at 4.)

Beginning in November 2015, Provectus's Chief Financial Officer ("CFO") began asking Dees to substantiate his travel advances. (*Id*.) In February 2016, Dees produced receipts totaling $297,170, which he claimed "substantiated a portion of the $898,430 he received from Provectus in 2015." (*Id*.) However, according to Provectus, most of the receipts and documentation submitted by Dees were "altered and/or forged." (*Id*.)

In February 2016, Dees submitted a letter of resignation to Provectus's CFO. (*Id*. at 5.) Since his resignation, Dees has refused to speak to any officer, employee, or representative of Provectus. (*Id*.) According to Provectus, Dees regularly provided monies from fraudulently obtained travel advances to Godfrey, which she used to pay personal and business debts as well as expenses unrelated to any legitimate Provectus business. (*Id*.) Provectus also contends that Dees used fraudulently obtained travel advances to pay personal debts and expenses, including joint income tax liabilities. (*Id*.)

Additionally, Provectus alleges that Dees entered a settlement agreement dated October 13, 2014, which resolved claims against him derivatively asserted by shareholders on behalf of

2
Case 3:16-cv-00222-HBG   Document 59   Filed 07/25/17   Page 2 of 11   PageID #: 669

Provectus. (*Id*. at 9–10.) The underlying case "included allegations that Dees unilaterally approved unreasonably high compensation for himself and other officers in violation of his fiduciary duties." (*Id*. at 10.) Under the terms of the settlement agreement, Dees was obligated to repay Provectus $2,240,000, along with other legal fees and expenses. (*Id*.) As of the date of Dees's resignation, he owed Provectus $2,267,750. (*Id*.) The amounts Dees owed under the settlement agreement are secured pursuant to a stock-pledge agreement that grants Provectus a first-priority secured interest in 1,000,000 shares of Provectus common stock owned by Dees. (*Id*.) Provectus has notified Dees that he is in default pursuant to the terms of the settlement agreement and has demanded that Dees pay amounts owed to it under the settlement agreement. (*Id*. at 11.) Dees refuses to make such payments. (*Id*.)

Based on these allegations, Provectus asserts the following causes of action against Dees and Godfrey: (1) conversion; (2) fraud; (3) breach of fiduciary duty; (4) breach of contract; (5) breach of settlement agreement; (6) unjust enrichment; and (7) punitive damages. (*Id*. at 6–12.) Provectus also requests that the Court appoint a receiver. (*Id*.)

Provectus served Dees and Godfrey with summonses and copies of the complaint on May 9, 2016. (Docs. 6, 7.) Provectus also served Dees and Godfrey with additional summonses on June 9, 2016, and June 16, 2016. (Docs. 13–16.) As reflected on Provectus's proofs of service, Godfrey was not personally served; rather, the summonses for Godfrey were left at Godfrey's residence with Dees.[1] (Docs. 7, 13.) Dees and Godfrey, however, did not file answers or responsive pleadings to Provectus's complaint or amended complaint as required by Rule 12 of the Federal Rules of Civil Procedure.

---

[1] A summons was also sent to Godfrey by certified mail, which Dees signed for on June 16, 2016. (Doc. 16.) Godfrey avers that she did not authorize Dees to accept service on her behalf and that he did not tell her that he accepted service in this case on her behalf. (Doc. 39-1, at 1.)

On June 27, 2016, Provectus filed a request for entry of default against Dees and Godfrey pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Docs. 17, 19.) On July 20, 2016, the Clerk of Court for the United States District Court for the Eastern District of Tennessee entered default against Dees (Doc. 18), and on August 16, 2016, entered default against Godfrey (Doc. 20).

On January 3, 2017, after Provectus moved for default judgment and for a damages hearing, Godfrey moved to set aside the Clerk's entry of default against her. (Doc. 39.) On March 15, 2017, the Court set aside the Clerk's entry of default against Godfrey and set a damages hearing as to Provectus's motion for default judgment against Dees. (Doc. 46.)

On April 26, 2017, the Court held a damages hearing in connection with Provectus's motion for default judgment against Dees. At the hearing, the Court heard testimony from John R. Glass, interim CFO for Provectus. (*See* Doc. 53.) Additionally, Provectus submitted post-hearing briefing and exhibits specifically delineating the damages they seek from Dees. (Docs. 57, 58.)

## II. ANALYSIS

Applications for default judgment are governed by Rule 55(b)(2) of the Federal Rules of Civil Procedure. Following the Clerk's entry of default pursuant to Rule 55(a) and the plaintiff's application for default judgment under Rule 55(b), the complaint's factual allegations regarding liability are taken as true, while allegations regarding damages must be proven. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). The party seeking default judgment bears the burden of establishing damages. *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011).

In this case, Provectus has asserted claims against Dees for: (1) conversion; (2) fraud; (3) breach of fiduciary duty; (4) breach of contract; (5) breach of settlement agreement; (6) unjust enrichment; and (7) punitive damages. Because Dees has failed to respond to Provectus's factual allegations regarding liability, Provectus's factual allegations regarding liability are taken as true, and the Court must now determine the amount of damages proven by Provectus.

Provectus has submitted post-hearing briefing and exhibits regarding its damages. (Docs. 57, 58.). In its post-hearing brief, Provectus requests that the Court award the following categories of damages:

(1) Compensatory damages for travel and expense monies wrongfully misappropriated by Dees from 2013 until his resignation from Provectus in 2016;

(2) Compensatory damages for "reasonable, necessary, and foreseeable out-of-pocket expenses directly and proximately caused by Dees['s] fraudulent conduct, and legally required in the investigation of the misappropriation of travel and expense monies, breach of fiduciary duties, and loss of good will, to include forensic accountants, forensic document examiner, forensic computer specialists, and attorney's fees related to the investigation of this claim and inquiries from government agencies";

(3) Compensatory damages for the full outstanding balance owed by Dees to Provectus pursuant to the settlement and stock pledge agreement in the prior lawsuit of *Kleba v. Dees*, including interest;

(4) Punitive damages for Dees intentional, willful, and malicious conduct; and

(5) Costs for reasonable and necessary expenses incurred by Provectus during litigation of this matter.

(Doc. 58, at 3–4.) Provectus also requests that the Court convert its preliminary injunction (Doc. 35), into a permanent injunction to prevent Dees from disposing of any collectable assets, including the 1.4 million shares of Provectus stock that he owns. (Doc. 58, at 4.)

**A.** *Compensatory Damages for Misappropriation of Travel and Expense Funds*

According to Larry Soldinger, a certified public accountant and forensic accountant, Provectus sustained at least $2,533,127.00 in damages based on Dees's misappropriation of

5

advanced travel and expense monies between 2013 and 2016.  (Doc. 51-7, at 20–21.)  Based on Soldinger's testimony, the Court finds that Provectus has proven that it incurred damages of $2,533,127.00 in connection with Dees's misappropriation of advanced travel and expense funds and, thus, will enter a judgment awarding Provectus compensatory damages in that amount.

### B. *Compensatory Damages for "Out-of-Pocket" Expenses*

Provectus next requests that the Court award compensatory damages in connection with "out-of-pocket" expenses it incurred as a result of Dees's wrongful actions.  Specifically, Provectus asserts that it is entitled to:  (1) $62,093.00 for forensic accounting work done by Kraft CPAs; (2) $11,137.50 for "digital forensic" work done by Sword & Shield; (3) $4,162.50 for forensic document examination conducted by Susan Abbey; (4) $46,000.00 for forensic accounting work conducted by Larry Soldinger and Associates; (5) $698,487.39 for legal work performed by Baker Donelson in connection with governmental agency investigations of Dees's conduct; (6) $115,525.55 for legal work conducted by the Hardin Law Office in connection with investigation of Dees's misconduct; (7) $350.00 for private investigation fees; (8) $1,985.10 for fees incurred in production of bank and travel records subpoenaed; and (9) $1,134.48 in shipping costs.  (Doc. 58, at 6–9.)  In total, Provectus asserts that it is entitled to compensatory damages of $940,875.52 for "out-of-pocket" expenses it incurred investigating Dees's wrongful conduct.

In its brief, Provectus generally asserts "[o]ut-of-pocket expenses have been recognized as appropriate economic damages in many different contexts."  (Doc. 58, at 6.)  The cases Provectus cites, however, fail to demonstrate that out-of-pocket expenses are recoverable damages in connection with its specific claims against Dees.  For example, Provectus cites *First Tennessee Bank National Ass'n v. Hurd Lock & Manufacturing Co.,* 816 S.W.2d 38, 43 (Tenn. Ct. App. 1991), for the proposition that "direct out-of-pocket expenses incurred by a party as a

direct and proximate result of a breach of contract, if within the contemplation of the parties, is a consequential damage and is recoverable." (*See* Doc. 58, at 6.)  Provectus, however, has not provided any evidence indicating that out-of-pocket expenses were within the contemplation of the parties in connection with its breach of contract claim against Dees.[2]  Accordingly, Provectus has not demonstrated it is entitled to compensatory damages in connection with "out-of-pocket" expenses it incurred as a result of Dees's conduct.

### C. *Compensatory Damages for Breach of Settlement Agreement*

Provectus next asserts that it is entitled to compensatory damages in connection with Dees's breach of a settlement agreement in which he agreed to reimburse Provectus $2,240,000, plus twenty-five percent of litigation costs, including attorneys' fees, in connection with the settlement of a shareholders' derivative lawsuit brought against him.  (*See* Ex. 9 to April 26, 2017 Damages Hrg.)  Based on Dees's failure to make payments as required by the settlement agreement, Provectus's Interim CFO, John Glass, testified Dees owes Provectus $2,494,525.00, which is immediately due and payable as a result of Dees's termination.  Based on Glass's testimony, the Court finds that Provectus has proven it incurred damages of $2,494,525.00 in connection with Dees's breach of the settlement agreement and, thus, will enter a judgment awarding Provectus compensatory damages in that amount.[3]

---

[2] The other cases Provectus cites similarly fail to establish that out-of-pocket expenses are recoverable in connection with its claims against Dees.  That out-of-pocket expenses have been awarded in fraud cases in Alabama courts, in civil rights cases, in negligent water-contamination cases, and in contempt actions in bankruptcy court proceedings does not demonstrate that out-of-pocket expenses are properly awarded as damages in connection with claims for conversion, fraud, breach of fiduciary duty, and/or unjust enrichment under Tennessee law.

[3] In its amended complaint and in its post-hearing brief, Provectus requests that the Court order Dees to return to Provectus 1,000,000 shares of common stock that Dees pledged as security in connection with the settlement agreement to partially satisfy any judgment entered against him, and that the Court appoint a receiver to handle disposition of the returned stock. (Doc. 8, at 12–13; Doc. 58, at 10.)  At this stage of the litigation, the Court is ruling on the amount of monetary

7

### D. *Punitive Damages*

Provectus also requests that the Court award punitive damages based on Dees's conduct. In Tennessee, punitive damages may be awarded if the plaintiff proves by clear and convincing evidence that the defendant acted maliciously, intentionally, fraudulently, or recklessly. Tenn. Code Ann. § 29-39-104(a)(1). In determining the amount of punitive damages, the trier of fact shall consider:

1. the defendant's financial condition and net worth;

2. the nature and reprehensibility of the defendant's wrongdoing;

3. the impact of the defendant's conduct on the plaintiff;

4. the relationship of the defendant to the plaintiff;

5. the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm;

6. the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct;

7. the expense the plaintiff has borne in attempts to recover the losses;

8. whether the defendant profited from the activity, and if the defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

9. whether, and the extent to which, the defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

10. whether, once the misconduct became known to the defendant, the defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

11. any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages.

---

damages awarded, not how satisfaction of a judgment entered against Dees will be effectuated. Accordingly, the Court will deny Provectus's request to order return of the common stock Dees pledged as security at this time. Provectus may, however, move for return of Dees's common stock and for appointment of a receiver after the Court enters default judgment against Dees.

8
Case 3:16-cv-00222-HBG   Document 59   Filed 07/25/17   Page 8 of 11   PageID #: 675

Tenn. Code Ann. § 29-39-104(a)(4). Generally, punitive damages are limited to two times compensatory damages or $500,000, whichever is greater. Tenn. Code Ann. § 29-39-104(a)(5). However, these limits do not apply if "the defendant intentionally falsified, destroyed or concealed records containing material evidence with the purpose of wrongfully evading liability in the case at issue." Tenn. Code Ann. § 29-39-104(a)(7)(B).

In this case, the Court finds that Provectus has demonstrated by clear and convincing evidence that Dees engaged in intentionally fraudulent conduct by misappropriating advanced company funds to matters wholly unrelated to accomplishing legitimate company business. Accordingly, the Court will award Provectus punitive damages of $1,000,000.00 against Dees.

**E.** *Costs*

Provectus next requests that the Court award it, as the prevailing party, certain costs it incurred beyond the scope of costs recoverable under Rule 54(d) of the Federal Rules of Civil procedure and Title 28, Section 1920 of the United States Code. Specifically, Provectus requests that the Court order it be allowed to recover costs for filing fees, the sheriff's service of process, deposition transcripts, court reporter fees, and copying costs. The Court hereby **ORDERS** that Provectus be permitted to recover costs consistent with the Court's general policy on taxation of costs as set forth in the Court's Guidelines on Preparing Bills of Costs.[4]

**F.** *Permanent Injunction*

Finally, Provectus requests that the Court convert its previously entered preliminary injunction into a permanent injunction to prevent Dees from selling or otherwise dissipating assets that could be used to satisfy a judgment entered against him. (Doc. 58, at 10.) A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury;

---

[4] Available at http://www.tned.uscourts.gov/docs/guidelines.pdf.

9

Case 3:16-cv-00222-HBG   Document 59   Filed 07/25/17   Page 9 of 11   PageID #: 676

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

In this case, the Court finds that Provectus has made the requisite showing for converting the previously entered preliminary injunction into a permanent injunction. First, Provectus has succeeded on the merits of its claims against Dees as a result of Dees failing to defend himself in this lawsuit. Second, an award of damages may not be adequate to compensate Provectus for its losses in connection with Dees's conduct. Provectus previoulsy supplied evidence indicating that Dees has taken actions to conceal his assets or otherwise convey assets that could be used to satisfy a judgment against him. (*See* Doc. 23-1, at 7–8.) Although Provectus has traditional methods of executing a judgment available to it, awarding monetary damages alone may not be adequate to ensure that Provectus will be able to collect. Further, even though the Court is assessing a substantial monetary judgment against Dees, the equities favor issuance of a permanent injunction to ensure that Dees's debt to Provectus is repaid to the fullest extent possible. Finally, it is in the public interest to ensure that money unlawfully obtained by Dees is not withheld from its rightful owner, especially given Provectus's status as a publically traded company. *See Dist. Title v. Warren*, No. CV 14-1808 (ABJ), 2015 WL 7180200, at *10 (D.D.C. Nov. 13, 2015), *aff'd*, No. 15-7157, 2016 WL 3049558 (D.C. Cir. May 4, 2016). Accordingly, the Court will enter a permanent injunction enjoining Dees from dissipating assets until the judgment against him is satisfied.

10
Case 3:16-cv-00222-HBG   Document 59   Filed 07/25/17   Page 10 of 11   PageID #: 677

### III. CONCLUSION

For the reasons stated herein, Provectus's motion for default judgment against Dees (Doc. 21) is **GRANTED IN PART**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**
